Next case on our calendar is United States v. Francisco Sanchez. Thank you. I'm not, no, not really. No, don't bother. Thank you. Morning. Good morning, Your Honors. May it please the Court. My name is John Wallenstein. I represent Francisco Sanchez. This case really involves two separate questions, both of which I think are fairly simple. Mr. Sanchez, as you know, was convicted of being a felon in possession of a firearm because he was dumb enough to be driving on the Palisades Parkway with tinted windows and got pulled over. But when he was sentenced for the second time by Judge Scheinlein, he was sentenced at a base offense level of 24 under the guidelines based upon two prior controlled substances offenses. New York law at the time that he committed those two offenses in mid to late 1998 criminalized what the law has previously characterized as a mere offer, and that was not changed under New York jurisdiction. Well, I think there certainly was some case law to that effect, but I don't think the Court of Appeals was definitive until People v. Mike, which was December 1998. But don't you have to show that mere offers were satisfying the statute? I think that they did. The fact that lower courts in New York may have indicated that a bona fide offer was required didn't eliminate the state of the law generally that a mere offer was sufficient until the Court of Appeals spoke in People v. Mike. What established the mere offer was sufficient? I'm sorry? What established that the mere offer was sufficient in New York prior to the New York Court of Appeals decision? I think that that was the People v. Mike itself speaks about the fact that mere offers had been criminalized prior to that. And that they definitively said, no, it's got to be a bona fide offer. You have to have the intent and the ability to carry out that offer. And that's December 3, 1998. But Mr. Sanchez's offenses were prior to that. So I think that's broader than the sentencing guideline issue and means that Judge Shanlin applied the incorrect base offense level. And that's my argument on that point. The other point is the obstruction of justice. I'm sorry. Before you move off that point, in Mike, Mike did not really change the law, did it? I mean, the district court said that Mike did not effect a C change in New York law. Isn't that correct? It's correct that that's what the district court said. Maybe it solidified it. I think it did solidify it. There were actually quite a few lower court cases even before Mike, including appellate division cases, holding that you needed a bona fide offer. There were some cases to that effect. Were there any cases to the opposite effect? Not that I found specific. That's what I asked you a minute ago. I understand, Judge Walker. I didn't find any specifically that said that you didn't need a bona fide offer. But I think that until the court of appeals spoke, the lower courts had the ability to determine that a mere offer was sufficient. And I suggest that there probably were some. One of the questions that comes up in these cases often is whether or not if there is a more lenient offense that might not fit within the federal guideline, whether the state actually prosecutes that offense. And if it doesn't prosecute it, then it's there hypothetically, but it's not for categorical analysis. It's not really relevant. I don't disagree with that, but I don't think there's any way to know what they don't prosecute, certainly. And even the ones that they do prosecute, I mean, we all know the statistics. Ninety-eight or something like that percent ends up in a plea anyway and doesn't wind up before any appeal. Sometimes the defendant can come up with prosecutions of these lesser offenses that did occur and make the argument that there's a history here of prosecuting for the offense that doesn't meet the federal guideline. But we don't have that in this case. We do not. Okay. On the obstruction of justice point. Yes. There were three different obstruction of justice points, right? False identification to the arresting officer and false identification at the bail application, concealing through the wife, concealing the prior and so on in both of those situations. Why isn't that sufficient? I don't think that presenting the false identification license in a different name to the officer I don't think constitutes obstruction of justice. Well, if you're in possession of a weapon and it's a question of whether you're going to be charged as a felon in possession, doesn't it make it more difficult for the government to find out whether you are run you through the databases and so forth to find out whether you are a prior felon? I suppose if you're running only on the name, then it might make it more difficult. But there's no indication. Yeah, but what to do with names, right? It does. But, of course, his fingerprints were taken and run through the system and they knew who he was within hours of his arrest. And I don't think that having a driver's license in a different name than the one you were born with is necessarily obstruction of justice. And I witness numerous people who use different names for different purposes. Stage names. Actually, I don't think numerous people get driver's licenses and false names unless they're seeking to avoid the consequences of their identification. Well, particularly in my experience, particularly in Hispanic people who use either the father's name or the mother's name, sometimes interchangeably, I find that the names sometimes vary. Well, was there some evidence that the identification that he presented to the officer bore some relationship to his real name? Well, it had his photo on it, as far as I know. What? It had his photo on it, as far as I know. His photo on it, but his name? I don't know the answer to that question. Okay. With respect to the other two points, the bail application, there's no indication there's no evidence that a bail application actually ever took place. The only thing we have is in the PSR, they mention unnamed sources saying that he asked his wife to destroy evidence or conceal evidence and that she was asked to present something incorrect or phony at the bail hearing. But, number one, I don't know that that ever happened. There's no indication that it did. And he certainly has been in jail since Officer Kimbrough arrested him in this case. And I don't think that either of those amounts to obstruction in any event, because So it can't be an actual obstruction or an attempt? I think it can be an attempt. I would concede that. But it has to relate, it has to be material to the offense charged. And the offense charged in this case usually is material to the offense charged, as well as making, perpetuating a false identification, particularly where it's a prior felony. Well, the material evidence to the offense charged, I mean, he was charged with being a felon in possession. They had his body. They had the weapon. And once they knew his prior record, there's nothing else to prove. So I don't see that any other evidence that could be concealed or destroyed. And again, we have no proof that any of that ever occurred, that any of that is material to the offense that was actually charged. I see I've gone over, so I'll- But you have reserved some time. I have reserved two minutes, yes. Yes, we'll hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Jason Richman, and I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States on appeal, and I represented the government at the Campusano hearing and the resentencing. But I did not represent the government in the original proceedings below. I will keep my presentation brief, Your Honor, and mostly rely on our briefs previously submitted, just to address a couple points that came up during the appellant's presentation. First, as to People v. Mike, we would certainly take the position that that was not a sea change in the law. The Court of Appeals was merely restating the law as it existed. The government is aware of no cases in which any New York court said that mere offers were criminalized. There are none in the record. Even the language of that case itself shows that this was not a sea change in the law. It was just sort of a statement by the Court of Appeals as to what the law was at the time it was stated. There was also evidence in the record that there was a known and unlawful sale at the plea allocution. That is correct, Your Honor. Moving on to the obstruction points, Your Honor, unless you have questions about point one, the government would submit that- The first one, false identification of the arresting officer, we discussed. But the other ones later on about what happened in terms of destroying evidence, that was, I guess, in the pre-sentence report, not detailed there. And then also any identification matters that were at the bail hearing, that was another issue, right? Correct, Your Honor. There were three independent bases, and the government would submit that any of the three would suffice. What is your answer to the second ones, not the one involving the false identification of the arresting officer? Your Honor, two things. First, in the PSR, Paragraph 8, both bases were relied upon, and Judge Shindlin adopted the factual findings in the PSR, and the government would submit that suffices. Judge Shindlin also detailed both of those bases a little bit further in her discussion of the 3553A factors. I think it's page A174 of the record. And the government would submit that both of those provide independent bases for the obstruction of justice enhancement, taking the direction to someone to destroy evidence. In this case, there's a plethora of evidence that could have been destroyed, which would have obstructed the administration of this case. For example— You know what the—I mean, there are no details, right? That is correct, Your Honor. There is nothing in the record. You don't know what the evidence was or— Not on the record before the court, Your Honor, and the government's not aware. How do we evaluate it if we don't even know what it was? I think we evaluate it based on the fact that the defendant attempted to do it. He called someone and said, I want you to destroy this evidence. There is evidence that could certainly have— Do we know what the evidence was? We do not, Your Honor. We do not know, potentially because she was successful in destroying it. We don't know that. But his attempt to have someone do that does suffice. In addition, his asking his wife to lie on the bail application, Your Honor, there's a long—I think Gumbs is the Second Circuit case, which details how— Do we know what the lie was? I think it was a lie about his name, Your Honor, I believe. Related to the name. I believe that's correct, Your Honor. And there's a long line—I think Gumbs is the Second Circuit case, which sort of summarizes the law, in which it is developed that lying to obtain bail always has the capacity— Notwithstanding the fact that by that time the government had already leveled a charge at him and knew that he was a felon or believed that he was a felon in possession under his real name. Correct, Your Honor. I think that— He could still, even notwithstanding that, he could still try to obstruct justice by telling his wife to say that his name was different. Correct, Your Honor. In the process of obtaining bail, because in this case—obtaining bail, I think the language from Gumbs is always has the capacity to obstruct justice because if someone gets out on bail, especially if they get out on falsely obtained bail, all sorts of things could happen. He could flee. Other things could happen. And in the context of a lie, that constitutes obstruction of justice. Okay. Absent further questions from the Court, the government would rest on its brief. Thank you, counsel. Thank you. Mr. Wallenstein? Yes, Your Honor. I have a question for you. Very briefly. What do you make of Judge Shindlin's comment that no matter what—whether she's right or wrong, we know this is a departure from the recommended guideline, a downward departure. She would sentence him to the same amount whether the adjustment for judicial interference and interference with justice is correct or not? Well, she did say that. She did. And, you know, I— Does that shield her from any examination of what she did? I don't think so. If she applied the wrong enhancement, if she applied the enhancement incorrectly, then that's a procedural error that has to be rectified and— But she wouldn't have started from a different base. That's usually what errors do, is they put you at a different base to start the calculations. And she said this wouldn't have. Well, she did. But I still think that applying the obstruction enhancement is incorrect, and that has to be dealt with by this Court, whether she would have changed or not. And I just had one other thing to say, if I might, with respect to Mr. Richman's argument, that there was no evidence of the attempt to destroy or conceal evidence. There was no evidence of the lying to obtain bail. There was only a bare statement in the PSR which concededly Judge Shindlin adopted, but so what? There's no basis for it. Are we on plain error review? On the obstruction? I think so. What's the plain error here? That she applied the enhancement incorrectly. But there was no objection or attempt to complaint at the time that there was insufficient evidence. Just that counsel just let it pass, right? I understand that, but I think that's the plain error, that counsel did just let it pass. It should have been picked up by the Court and or by the government if defense counsel didn't. It should have been picked up by defense counsel, but that's a different issue. And not for this Court at this time. Thank you. Thank you both for a reserved decision.